IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SIG SAUER INC., <br><br> Plaintiff, <br><br> v. <br><br> ███████████████, <br><br> Defendant. | Case No. 25-cv-13552 <br><br> DEMAND FOR JURY TRIAL |

**AMENDED COMPLAINT**

Plaintiff Sig Sauer Inc. ("Plaintiff"), by and through its undersigned counsel, hereby files this Amended Complaint for trademark infringement under the Lanham Act and false designation of origin against Defendant ███████████████ ("Defendant"). In support hereof, Plaintiff states as follows:

**I.     JURISDICTION AND VENUE**

1.     This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, et seq., 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331.

2.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendant, since Defendant directly targets business activities toward consumers in the United States, including Illinois, through its operation of or assistance in the operation of the fully interactive, commercial internet store operating under the Defendant Internet Store ███████████ on ████. Specifically, the Defendant directly reaches out to do business with Illinois residents by operating or assisting in the operation of one or more commercial, interactive e-commerce stores that sell products using counterfeit versions of

1

Plaintiff's federally registered trademarks directly to Illinois consumers. In short, Defendant is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

## II. INTRODUCTION

3. Plaintiff files this action to combat an online infringer and counterfeiter who trades upon Plaintiff's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed counterfeit and infringing products using counterfeit versions of Plaintiff's federally registered trademarks ▮▮ (▮▮▮▮), ▮▮▮ (▮▮▮▮▮), and ▮ (▮▮▮▮▮) (collectively, the "▮▮▮ Trademarks"). *See* **Exhibit 1**. The Defendant created at least one internet store ▮▮▮▮ on ▮ (the "Defendant Internet Store" or the "Store") and designed it to appear to sell genuine SIG SAUER branded products, when in fact the Store sells counterfeit versions to unknowing customers.

4. Plaintiff has been forced to file this action to combat Defendant's willful infringement of Plaintiff's registered trademarks, as well as to protect unknowing consumers from purchasing counterfeit products over the Internet. Because of Defendant's actions, Plaintiff has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of its valuable trademarks. Accordingly, Plaintiff seeks injunctive and monetary relief.

## III. PARTIES

### Plaintiff Sig Sauer Inc.

5. Plaintiff is a Delaware corporation and is the creator and seller of high-quality firearms and firearm accessories designed to serve military, law enforcement, and civilian markets, including but not limited to pistols, rifles, shotguns, air guns, knives, and ammunition, as well as a range of accessories such as suppressors, optic mounts, red-dot and reflex sights, long range

telescopic riflescopes, rangefinders, night vision gear, and both tactical and casual apparel ("SIG SAUER Products"). The SIG SAUER equipment was designed to provide consumers with an enhanced firearm and firearm accessory usage experience. Plaintiff sells these designs through its SIG SAUER brand, which allows consumers to purchase genuine products through the company's website. The SIG SAUER Products have become enormously popular and even iconic, driven by Plaintiff's exacting quality standards and innovative designs. Among the purchasing public, genuine SIG SAUER Products are instantly recognizable as such in the United States and around the world.

6. Plaintiff launched its SIG SAUER branded products in 2007 following an official company name change from SIGARMS which reflected its global growth, that, for example, can be viewed and purchased through the company's website storefront[1]. Founded in 1853 as a wagon factory in Switzerland, the Company evolved into a world-renowned firearms manufacturer and expanding through acquisitions and innovation. Today, with over 3,400 employees and global operations, SIG SAUER produces a wide range of firearms, optics, and accessories for military, law enforcement, and commercial markets. Plaintiff has introduced several products under the SIG SAUER brand through its e-commerce marketplaces. Plaintiff's unique products have been advertised with its federally registered trademarks for several years. Plaintiff continues to heavily advertise its unique products on all its e-commerce marketplaces, social media, advertisements, and product demonstration videos to educate consumers on both its products and trademarked name. Its online marketplaces and social media feature original content, reviews, and testimonials for SIG SAUER Products.

---

[1] https://www.sigsauer.com/store

7. Plaintiff is the manufacturer, distributor, and retailer of SIG SAUER Products. The Company is engaged in the business of distributing and retailing its high-quality firearm accessory products within the Northern District of Illinois under the federally registered SIG SAUER Trademarks. Defendant's sales of the counterfeit products in violation of Plaintiff's intellectual property rights are irreparably damaging the Plaintiff.

8. Plaintiff has registered the trademarks ▇▇ (▇▇▇▇▇▇), SIG SAUER (▇▇▇▇▇▇), and ▇▇ (▇▇▇▇▇▇) ▇▇▇▇ Trademarks") with the United States Patent and Trademark Office. The SIG SAUER Trademarks are incontestable pursuant to 15 U.S.C. § 1065. Prior to registrations, the Company continuously used ▇▇, ▇▇▇▇, and ▇▇ as the trademarks for its products beginning with their introduction. The SIG SAUER Trademarks are distinctive and identify the merchandise as goods originating from the Plaintiff. The registrations for the SIG SAUER Trademarks constitute prima facie evidence of their validity and of Plaintiff's exclusive right to use the SIG SAUER Trademarks pursuant to 15 U.S.C. § 1057(b). The SIG SAUER Trademarks have been continuously used and have never been abandoned since their first use.

9. Plaintiff uses the SIG SAUER Trademarks to identify its goods. The trademarks are distinctive when applied to Plaintiff's goods, signaling to the purchaser and consumer that the products are from Plaintiff and are made and manufactured to Plaintiff's original specifications and standards.

10. Since its initial launch of the original SIG SAUER branded products and as of its first use of the SIG SAUER Trademarks, Plaintiff's trademarks have been the subject of substantial and continuous marketing and promotion by Plaintiff throughout the United States and, due to its strong internet presence, throughout the entire world. Plaintiff has and continues to widely promote

4

and market its trademarks to the general public, including through its official website storefront. Genuine and authentic SIG SAUER branded products are offered and sold by Plaintiff directly through its website and authorized storefronts.

11. Plaintiff has expended substantial time, money, and other resources to develop, advertise, and otherwise promote the SIG SAUER Trademarks and brand. As a result, consumers recognize that products bearing the distinctive SIG SAUER Trademarks originate exclusively from Plaintiff.

**Defendant**

12. Defendant is an individual or entity who, upon information and belief, resides in the People's Republic of China or another foreign jurisdiction. Defendant conducts business throughout the United States, including within the state of Illinois and in this Judicial District, through the operation of fully interactive commercial websites and online commercial marketplaces operating under the Defendant Internet Store. Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell infringing products to consumers within the United States, including Illinois and in this Judicial District.

## IV. DEFENDANT'S UNLAWFUL CONDUCT

13. The success of Plaintiff's brand has resulted in significant infringement and counterfeiting. Consequently, Plaintiff has identified numerous marketplace listings on e-commerce platforms, such as but not limited to eBay, that include the Defendant Alias and that have been offering for sale, completing sales, and exporting illegal products to consumers in this Judicial District and throughout the United States. E-commerce sales, including e-commerce internet stores like that of Defendant, have resulted in a sharp increase in the shipment of

unauthorized products into the United States. *See* **Exhibit 2**, U.S. Customs and Border Protection, *Intellectual Property Rights Seizure Statistics, Fiscal Year 2024*. According to Customs and Border Patrol's ("CBP") report, from Fiscal Year (FY) 2020 to FY 2024, the total number of goods seized for IPR violations has more than doubled. In addition to seizure, CBP executed 99,959 alternative enforcement actions, such as abandonment and destruction. *Id.* China and Hong Kong are consistently the top two for IPR seizures. In FY 2024, seizures from China and Hong Kong accounted for approximately 90% of the total quantity seized. *Id.* The vast majority of IPR seizures continue to take place within the express consignment and mail shipping methods. In FY 2024, 97% of IPR seizures in the cargo environment occurred in the de minimis shipments. *Id.* Counterfeit and pirated products account for billions of dollars in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

14. Counterfeiters, such as Defendant here, are typically in communication with each other. They regularly participate in QQ.com chat rooms and communicate through websites such as sellerdefense.cn, kaidianyo.com, and kuajingvs.com, where they discuss tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

15. Counterfeiters take advantage of the anonymity provided by the internet, which allows them to evade enforcement efforts to combat counterfeiting. For example, counterfeiters take advantage of the fact that marketplace platforms do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these Internet platforms." *See* **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 41 Nw. J. Int'l. L. & Bus. 24 (2020). Additionally, "Internet commerce platforms create bureaucratic or

6

technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." *Id.* at 25. Therefore, with the absence of regulation, Defendant may and does garner sales from Illinois residents by setting up and operating e-commerce internet stores that target United States consumers using one or more aliases, offers shipping to the United States, including Illinois, accepts payment in U.S. dollars, and, on information and belief, has sold counterfeit products to residents of Illinois.

16. Upon information and belief, at all relevant times hereto, the Defendant in this action has had full knowledge of Plaintiff's ownership of the SIG SAUER Trademarks, including its exclusive right to use and license such intellectual property and its associated goodwill.

17. Upon information and belief, Defendant deceives unknowing customers by using the SIG SAUER Trademarks without authorization within the content, text, and/or metatags of their websites and marketplace storefronts to attract various search engines on the internet looking for websites relevant to consumer searches for Plaintiff's SIG SAUER branded products. Additionally, upon information and belief, Defendant uses other unauthorized search engine optimization tactics and social media spamming so that the Defendant's Internet Store listings show up at or near the top of relevant search results after others are shut down.

18. Defendant's use of the SIG SAUER Trademarks on or in connection with the advertising, marketing, distribution, offering for sale, and sale of counterfeit products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

19. Defendant, without authorization or license from Plaintiff, knowingly and willfully used and continues to use the SIG SAUER Trademarks in connection with the advertisement, offer for sale, and sale of the counterfeit products, through the internet. The counterfeit products are not

SIG SAUER branded products of the Plaintiff. Plaintiff did not manufacture, inspect, or package the infringing products and did not approve the infringing products for sale or distribution. Defendant's Internet Store offers shipping to the United States, including Illinois, and, on information and belief, Defendant has sold counterfeit products into the United States, including Illinois.

20. Upon information and belief, Defendant will continue to register or acquire listings for the purpose of selling counterfeit products that infringe upon the SIG SAUER Trademarks unless preliminarily and permanently enjoined.

## COUNT I

## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

21. Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 20.

22. This case concerns a trademark infringement and counterfeiting action against Defendant based on unauthorized use in commerce of counterfeit imitations of the federally registered SIG SAUER Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The SIG SAUER Trademarks are distinctive marks. Consumers have come to expect the highest quality from Plaintiff's products bearing the SIG SAUER Trademarks.

23. Defendant has sold and continues to sell, market, distribute, and advertise products bearing the SIG SAUER Trademarks without Plaintiff's permission. *See* **Exhibit 4**.

24. Plaintiff is the exclusive owner of Plaintiff's trademarks. Plaintiff's U.S. registrations for the SIG SAUER Trademarks are in full force and effect. *See* **Exhibit 1**. Upon information and belief, Defendant has knowledge of Plaintiff's rights in Plaintiff's trademarks and

is willfully and intentionally offering counterfeit items bearing Plaintiff's trademarks. Defendant's willful, intentional, and unauthorized use of Plaintiff's trademarks is likely to cause confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general consuming public.

25.     Defendant's activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

26.     Plaintiff has no adequate remedy at law, and if Defendant's actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known trademarks.

27.     The injuries sustained by Plaintiff have been directly and proximately caused by Defendant's wrongful reproduction, use, advertisement, promotion, offer to sell, and sale of counterfeit versions of Plaintiff's SIG SAUER branded products.

## COUNT II

## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125)

28.     Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 27.

29.     Defendant's advertising, marketing, promotion, distribution, display, offering for sale, sale, and/or otherwise dealing in counterfeit versions of Plaintiff's products has created and is creating a likelihood of confusion, mistake, and deception among the public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of such products.

30.     By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling, and/or otherwise dealing in the counterfeit products, Defendant has offered and shipped goods in interstate commerce.

31. Likewise, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling, and/or otherwise dealing in the counterfeit products, Defendant has and continues to trade on the extensive goodwill of Plaintiff to induce customers to purchase a counterfeit version of Plaintiff's products, thereby directly competing with Plaintiff. Such conduct has permitted and will continue to permit Defendant to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which Plaintiff has amassed through its lengthy nationwide marketing, advertising, sales, and cumulative consumer recognition.

32. Defendant knew or, by the exercise of reasonable care, should have known that their past, current, and continuing advertising, marketing, promotion, distribution, display, offering for sale, sale and/or otherwise dealing in the counterfeit goods has and will continue to cause confusion and mistake or to deceive purchasers, users, and the public.

33. In addition, by using Plaintiff's trademarks in connection with the sale of counterfeit products, Defendant creates a false designation of origin and a misleading representation of the fact as to the origin and sponsorship of the counterfeit product.

34. Defendant's false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit product to the public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

35. As a direct and proximate result of Defendant's wrongful actions, Plaintiff has been and will continue to be deprived of substantial sales of its genuine products.

36. Plaintiff has no adequate remedy at law and, if Defendant's actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

A. The Defendant, its affiliates, officers, agents, employees, attorneys, and all other persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    i. using Plaintiff's trademarks in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine product of Plaintiff, or is not authorized by Plaintiff to be sold in connection with Plaintiff's trademarks;

    ii. passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiff product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authority, control, or supervision of Plaintiff and approved by Plaintiff for sale under Plaintiff's trademarks and associated with or derived from Plaintiff's trademarks;

    iii. making, using, selling, and/or importing to the United States for retail sale or resale any products that infringe Plaintiff's trademarks;

    iv. committing any acts calculated to cause consumers to believe that Defendant's counterfeit products are sold under the authority, control, or supervision of Plaintiff, or are sponsored by, approved of, or otherwise connected with Plaintiff, including without limitation through use of Plaintiff's original photographs and marketing text in connection with the offer or sale of counterfeit products;

    v. further infringing Plaintiff's trademarks and damaging Plaintiff's goodwill;

    vi. otherwise competing unfairly with Plaintiff in any manner;

      vii.    shipping (including drop-shipping), delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any Plaintiff's trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

      viii.    using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Internet Store, or any other domain name or online marketplace account that is being used to sell or is how Defendant could continue to sell counterfeit products;

      ix.    operating and/or hosting websites at the Defendant Internet Store of any other domain names registered or operated by Defendant that are involved in the distribution, marketing, advertising, offering for sale, or sale of any product bearing the Plaintiff's trademarks or reproduction, counterfeit copy, or colorable imitation thereof that is not a genuine product or not authorized by Plaintiff to be sold in connection with the Plaintiff's trademarks; and,

      x.    registering any additional domain names that use or incorporate any portion of the Plaintiff's trademarks; and,

B.    That Defendant, its affiliates, officers, agents, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

      i.    displaying images protected by the Plaintiff's trademarks in connection with the distribution, advertising, offer for sale and/or sale of any product that is not a

          genuine product of Plaintiff's or is not authorized by Plaintiff to be sold in connection with the Plaintiff's trademarks; and

    ii.    shipping, delivering, holding for same, distributing, returning, transferring, or otherwise moving, storing, or disposing of in any manner products or inventory not manufactured by or for Plaintiff, not authorized by Plaintiff to be sold or offered for sale, and protected by the Plaintiff's trademarks or any reproductions, counterfeit copies, or colorable imitation thereof; and,

C.    That Defendant, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendant has complied with any and all injunctive relief ordered by this Court;

D.    Entry of an Order that, upon Plaintiff's request, those in privity with Defendant and those with notice of the injunction, including any online marketplaces such as ▇; payment processors such as PayPal, Stripe, Payoneer, and LianLian; social media platforms such as: Facebook, Instagram, Snapchat, TikTok, YouTube, LinkedIn, Twitter; Internet search engines such as: Google, Bing, and Yahoo; webhosts for the Defendant Domain Names; and domain name registrars, that are provided with notice of the injunction, cease facilitating access to any or all webstores through which Defendant engages in the sale of counterfeit products using the Plaintiff's trademarks; shall:

    i.    disable and cease providing services for any accounts through which Defendant engages in the sale of counterfeit Plaintiff's SIG SAUER branded product using Plaintiff's trademarks, including any accounts associated with the Defendant; and,

13

      ii.    disable and cease displaying any advertisements used by or associated with Defendant in connection with the sale of counterfeiting and infringing counterfeit product using Plaintiff's trademarks; and,

      iii.    take all steps necessary to prevent links to the Defendant Online Store from displaying in search results, including, but not limited to, removing links to the Defendant Online Store from any search index; and,

E.    That Defendant accounts for and pays to Plaintiff all profits realized by Defendant by reason of Defendant's unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiff's trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

F.    For Judgment in favor of Plaintiff against Defendant that it has: (a) willfully infringed Plaintiff's rights in its federally registered trademarks pursuant to 15 U.S.C. § 1114; and (b) otherwise injured the business reputation and business of Plaintiff by Defendant's acts and conduct set forth in this Amended Complaint;

G.    In the alternative, that Plaintiff be awarded statutory damages pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of Plaintiff's trademarks;

H.    That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

I.    That Plaintiff be awarded any and all other relief that this Court deems equitable and just. Plaintiff demands trial by jury as to all causes of action so triable.

Dated: November 10, 2025             Respectfully submitted,

/s/ James E. Judge

Zareefa B. Flener (IL Bar No. 6281397)
James E. Judge (IL Bar No. 6243206)
Ying Chen (IL Bar No. 6346961)
Flener IP Law, LLC
77 West Washington Street, Suite 800
Chicago, Illinois 60602
(312) 724-8874
jjudge@fleneriplaw.com